# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>UNITED REFUSE LLC,<br><br>　　　Debtor. | Case No.　04-11503-RGM<br>(Chapter 11) |
| UNITED REFUSE LLC,<br><br>　　　Plaintiff,<br><br>vs.<br><br>JAMES C. LEHNER and<br>SUZANNE LEHNER,<br><br>　　　Defendant. | Adv. Proc. No. 05-1551 |

## MEMORANDUM OPINION

THIS CASE is before the court on United Refuse LLC's Motion to Reopen Evidence and the defendants' response. (Docket Entries 50 and 66, respectively).

United Refuse filed a complaint against James C. Lehner and Suzanne Lehner on November 16, 2005.[1] Trial was held on July 13, 14, 24, and 26, 2006. The court announced its ruling on August 16, 2006. All parties filed motions for reconsideration which the court took under advisement. (Docket Entries 30 and 31). On October 19, 2006, United Refuse filed a motion requesting the court refrain from deciding the motions and defer entry of judgment for 20 days. (Docket Entry 39). It asserted that after the trial, United Refuse "recognized several anomalies in

---

[1] It was styled Objection to Claims and Counterclaim and was filed by United Refuse, LLC and United Leasing Corporation. The objection to claims was resolved in the bankruptcy case and only the counterclaim was tried in this adversary proceeding.

1

the general ledgers of United Refuse, as kept under the direction of the Lehners." Motion ¶1 at 1 (Docket Entry 39). The general ledger reflected positive balances, that is, money in the bank, for two bank accounts as of December 31, 2004. The balances shown were $27,133.13 and $17,844.26. The bank stated, however, that the accounts had been closed. Motion ¶¶1-2 at 1-2. As a result of this discovery, United Refuse undertook an investigation to determine the disposition of the funds and requested additional time to complete its investigation. On January 12, 2007, the court denied the motion as moot because the requested time had expired. Order entered January 12, 2007 (Docket Entry 44). United Refuse filed the present motion on February 15, 2007. (Docket Entry 50). It seeks to:

> reopen the taking of evidence in this adversary proceeding so as to permit United Refuse to show that Mrs. Lehner has, for the benefit of herself and/or Mr. Lehner, taken and used the funds of United Refuse in the amount of $63,611.15 or such other or further amount as the Court shall find proved.

Motion at 4-5. United Refuse filed a Declaration in Support of Motion to Reopen Evidence on March 23, 2007.[2] (Docket Entry 65). The Lehners filed a response. (Docket Entry 66). The motion was argued to the court on April 10, 2007.

There have been two significant trials in this bankruptcy case. The first was *United Refuse LLC v. United Leasing Corporation,* Adv. Proc. 04-1196, where two issues were tried: the validity, extent and priority of United Leasing's interests in United Refuse; and the ownership of United Refuse. On the ownership issue, both the Lehners and United Leasing asserted that they were the true owners of United Refuse. The court held that the Lehners held legal title to United Refuse as constructive trustees for the benefit of United Leasing. The second significant trial was this

---

[2]The declaration was made by William Daniel Sullivan, counsel to United Leasing and United Refuse. He has represented United Leasing since the beginning of this bankruptcy and was counsel for United Refuse in the trial of this adversary proceeding.

adversary proceeding. This case was a suit by United Refuse to recover personal expenses paid by United Refuse for the benefit of the Lehners during the Lehners' tenure as managers.[3]

The Lehners managed United Refuse until March 14, 2005, when the court held that United Leasing was the beneficial owner of United Refuse. United Leasing took control of United Refuse immediately upon entry of the order on March 14, 2005. United Leasing assigned Raymond C. Cullen, now president of United Leasing, to manage United Refuse and he appointed Steven Norment, an employee of United Leasing, to be the day-to-day on-site manager of operations. Declaration ¶6. Norment found that the Lehners had not paid District of Columbia sales taxes and that they had apparently expended company funds for personal matters. "Those findings set off a more thorough review of all the payments made by United Refuse" during the Lehners' tenure. Declaration ¶7. That review resulted in the filing of this adversary proceeding.

United Leasing had possession of the general ledgers from the time it took control on March 14, 2005. William Daniel Sullivan, initially United Leasing's attorney, used the general ledger in preparation for trial in this case. Declaration ¶8. After the trial was over (July 27, 2006), he "noticed" the positive balance of $27,133.13. in the general ledger. Declaration ¶10. He then describes in his declaration what he did. His actions commenced between July 27, 2006 and August 14, 2006, when Kermit A. Rosenberg, counsel for United Refuse, issued a subpoena to a bank under a Rule 2004 order entered two years earlier, on August 3, 2004.[4] (Docket Entry 80). His actions resulted in the filing of this motion on February 15, 2007. Declaration ¶¶10-14. United Refuse asserts that Mrs. Lehner diverted corporate funds for her personal use in addition to those

---

[3] Judgment will be entered today against the Lehners jointly for $26,601.53 and against Mr. Lehner, individually, for $29,878.93.

[4] The court announced its decision in this case on August 16, 2006.

proven at the trial of this adversary proceeding. It requests that the evidence be reopened and that a further trial be scheduled as to these issues.

The first issue is the authority of the court to act and the standard by which it should act. United Refuse asserts that none of rules of the Federal Rules of Bankruptcy Procedure are applicable to these circumstances and that granting the motion is within the discretion of the court. It argues that the standard is similar to the standard for Fed.R.Bankr.P. 9023, which incorporates Fed.R.Civ.P. 59, but is more relaxed. Tr. 4/10/2007 at 15-17, 21.

There is case authority for United Refuse's position that its motion is not within Rule 59. In *Caracci v. Brother Int'l. Sewing Mach. Corp. of La.,* 222 F.Supp. 769 (E.D.La. 1963), the district court assumed that a court could reopen a case for further evidence when it stated:

> The trial court may properly look with more favor upon a motion to reopen made after submission, but before any indication by it as to its decision, *Bowles v. Six States Coal Corporation,* D.C., 64 F.Supp. 651, than when the motion comes after a decision has been rendered although findings of fact and conclusions of law have not been formally made and judgment entered. *Rue v. Feuz Construction Company,* D.C., 103 F.Supp. 499.

*Id.* at 771. The court further noted that the district court in *Schick Dry Shaver v. General Shaver Corp.,* 26 F.Supp. 190 (D.Conn. 1938) found such a motion not to be controlled by Rule 59. In *Schick Dry Shaver,* the court stated:

> Rule 59 of the new rules on civil procedure, 28 U.S.C.A. following section 723c, as cited by plaintiffs. The heading is New Trials. This is not a motion for a new trial, nor could there be one because the old case is still open and undecided.

*Id* at 191.

The Supreme Court has also commented on reopening a case. It stated, "The trial judge here might have permitted reopening. Like a motion under Rule 15(a) to amend the pleadings, a motion

4

to reopen to submit additional proof is addressed to his sound discretion." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 803 (1971).

These cases, while not definitively holding that motions to reopen a case to take additional evidence exist outside the parameters of Rule 59, at least indicate that this is the case. It is clear that there is a basis for a motion to reopen a case to take further testimony – be it by a motion to reopen or a motion under Rule 59 – the more important question is the standard to be applied. The cases discussing a motion to reopen hold that the motion is addressed to the court's sound discretion. *Zenith Radio Corp. v. Hazeltine,* 401 U.S. at 331, 91 S.Ct. at 803 (sound discretion of trial judge); *Ramsey v. United Mine Workers of America,* 481 F.2d 742, 753 (6th Cir.1973) (sound discretion of trial judge); *Ditter v. Yellow Cab Co.,* 221 F.2d 894, 899 (7th Cir.1955) (discretion of trial judge); *Gas Ridge v. Suburban Agr. Properties,* 150 F.2d 363, 366 *reh'g den.* 150 F.2d 1020 (5th Cir. 1945) (sound discretion of the judge).

The standard for obtaining relief under Rule 59 for newly discovered evidence is more specifically developed. The Court of Appeals for the Fourth Circuit stated:

> In this circuit, the standard governing relief on the basis of newly discovered evidence is the same whether the motion is brought under rule 59 or rule 60, *United States Fidelity & Guaranty Co. v. Lawrenson,* 334 F.2d 464, 475 n. 2 (4th Cir.), *cert. denied,* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964), and rule 60 requires that a party demonstrate:
>
> > (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.
>
> *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987) (citations omitted); *see also Garrick v. Kelly,* 649 F.Supp. 607 (E.D.Va.1986), aff'd, 842 F.2d 1290 (4th

Case 05-01551-RGM   Doc 71    Filed 06/07/07   Entered 06/07/07 11:36:08   Desc Main
                          Document      Page 6 of 13

> Cir.1988) (table). Thus, in order to support a motion for reconsideration, "the movant is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985) (citations and quotation marks omitted); *see also Stiers v. Martin,* 277 F.2d 737 (4th Cir.1960). Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law. *Frederick S. Wyle P.C.,* 764 F.2d at 609; *see also Taylor,* 831 F.2d at 259.

*Boryan v. United States,* 884 F.2d 767, 771-772 (4th Cir.1989).

A motion to reopen a case to present additional evidence considers similar factors. A court should consider the diligence of the movant. *Locklin v. Switzer Bros., Inc.,* 299 F.2d 160, 169 (9th Cir.1961) (failure to show diligence or justification for its failure to discover and present matters at trial). The proffered evidence should not be cumulative. *Ramsey v. United Mine Workers of America,* 481 F.2d at 753. It should affect the outcome of the case by, for example, offering a new theory of liability or present a significant alteration of the evidence presented at trial. *Id.* at 752. The prejudice to the opposite party resulting from the delay in discovering the proffered evidence should be considered. *Id.* at 753. The court should consider whether the decision has been announced. *Caraci*, 222 F.Supp. at 771.

The standards under Rule 59 and the considerations discussed by the courts considering motions to reopen are similar. One difference concerns whether the proffered testimony must be newly discovered. It must be under Rule 59. *Boryan v. United States,* 884 F.2d at 771 ("Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law."). It is not uncommon for an attorney, immediately after both parties have rested, to ask – sometimes with alarm in his voice – that the testimony be reopened to allow him to ask "just a few" questions he forgot to ask a witness. Clearly, the

testimony to be elicited is not newly discovered. Courts need – and have – the discretion, in the interest of justice, to allow parties to correct such oversights. As noted in *Caracci,* 222 F.Supp at 771, the exercise of that discretion may affected by the timing of the motion.

The court concludes that motions to reopen a case to receive additional evidence are committed to the sound discretion of the trial judge which discretion should be guided by standards similar to those for granting a new trial based on newly discovered evidence under Rule 59.

In this case, the evidence proffered by United Refuse is not cumulative. It does not repeat or merely reinforce evidence previously presented. It presents further transactions not previously considered. It may be that the expenditures fall within the same categories as those tried, but they do not repeat or reinforce those already proven. It may also be that they are proper company expenditures. That is the ultimate question. The proffered evidence could alter the outcome of the case by increasing the damages. It would not alter the outcome of any of the items already presented and actually litigated. The change would occur solely because new damages are presented.

Due diligence is more problematic. The general ledger was in the possession of United Refuse (then under the control of United Leasing and not the Lehners) before it filed its complaint in this case and has been since United Leasing regained control of United Refuse on March 14, 2005. United Refuse (when controlled by United Leasing) always had the ability to follow the leads contained in the general ledger and fully develop the evidence. It used the general ledger to develop the case tried in July 2006. It simply did not recognize the significance of this particular information until after that trial was over. When it recognized the significance of the evidence in its own possession, it began developing it, a process that could have been commenced and completed as a part of normal trial preparation. The fully developed evidence could have been presented at trial.

This is particularly well illustrated by Sullivan's statement in his declaration that the records of United Bank were subpoenaed pursuant to a Rule 2004 order. Declaration ¶14; Subpoena to United Bank (Case No. 04-11503, Docket Entry 391). The Rule 2004 order was entered on August 3, 2004. (Case No. 04-11503, Docket Entry 80). The order was made on a request that was filed on May 14, 2004. (Case No. 04-11503, Docket Entry 47). The relief requested in the Request for Production of Documents Pursuant to Rule 2004 and Memorandum in Support Thereof is as follows:

> 5. United Leasing files this Motion requesting production of documents based on its concerns that the Lehners have commingled pre- and postpetition assets of the Debtor with their own for their own use and appropriating those assets to the detriment of United Leasing and the Debtor's other creditors. United Leasing now seeks production of documents relating to the Lehners' personal affairs in an effort to investigate these issues. Consistent with that purpose, United Leasing requests that the Court require that the Banks comply with the request for documents attached hereto as Exhibit B.

Request for Production of Documents at 3 (Case No. 04-11503, Docket Entry 47).

United Leasing's argument in support of its request for a Rule 2004 examination makes quite clear that the scope of the examination was to be extensive. The request stated, "[t]he scope of a Rule 2004 examination is very broad and, in some cases, may even be in the nature of a 'fishing expedition.'" *Id.* at 4. It continued:

> Here, United Leasing seeks documents from the banks relating to the personal affairs of the Debtor's principals in an effort to determine how the Debtor's assets were managed and whether the Lehners breached any fiduciary obligations to the Debtor and its creditors. . . . Specifically, James Lehner has testified at various proceedings, in this case that: (a) he and Suzanne Lehner (the Debtor's alleged equity holders) have been receiving postpetition payments from the Debtor that are not attributable to salary; (b) funds were paid postpetition from Suzanne Lehner's personal account to pay prepetition wage claims

*Id.* at 4. United Leasing further states:

> United Leasing must obtain and review these documents to determine how the Debtor's principals were managing (or not) the Debtor's assets and where those assets have gone, whether the assets have been commingled with those of the Debtor's principals, and whether those assets were used to the detriment of United Leasing and the Debtor's other creditors.

*Id.* at 5.

At the hearing on the objection to the issuance of the rule on July 8, 2004, the colloquy that Sullivan referred to on April 10, 2007 (Tr. 4/10/2007 at 31), is as follows:

> MR. WADE:         There is a motion from United Leasing for a 2004 examination of records.
> THE COURT:        Of whom?
> MR. WADE:         Beg your pardon?
> THE COURT:        Who do they want –
> MR. WADE:         United Leasing
> THE COURT:        Wants to take the 2004 of whom?
> MR. WADE:         They [United Leasing] want records. They want records – bank records.
> THE COURT:        From whom?
> MR. WADE:         Oh, from every bank that anybody ever had anything to do with.

Tr. 7/8/2004 at 4.

> THE COURT:        All right. The 2004 examination – who wants to take that? Or who's asking for the records?
> MR. SULLIVAN:     We're [United Leasing] asking for the bank records.
> THE COURT:        Is there any objection to that?
> MR. WADE:         I have objection to the bank records of the individuals, Mr. and Mrs. Lehner. They want those, too.
>
>                   At this point, I'm not sure that even sure that these folks have established that they have any standing to get anything. We listed them as a creditor for $1, and it's disputed. They haven't filed a proof of claim. There hasn't been any evidence offered that they are owed one penny.
> THE COURT:        All right. What do you need the individual bank records for?
> MR. SULLIVAN:     Your Honor, there is ample evidence that will come out today that they – well, let me start with their schedules and their SOFA, in which they state unequivocally that there were no payments made to insiders within the year prior to bankruptcy. We can show that there were $70,000 of payments that –

9

   THE COURT:   So you want to look to insider trade dealings?
   MR. SULLIVAN:  Absolutely, Your Honor.

*Id.* at 7-8

  It is quite clear that at the beginning of the bankruptcy case United Leasing was concerned about the Lehners' management of United Refuse and their use of United Refuse's money. They were concerned about breaches of fiduciary duty, about commingling of funds, and about United Refuse's funds being paid improperly to, or on behalf of, the Lehners. They sought and obtained authority under Rule 2004 to investigate these matters and issued subpoenas to banks. One of the banks to which United Leasing was authorized to issue a subpoena was United Bank. Sullivan states in his declaration that one of the key elements was the subpoena to United Bank. Declaration ¶14. Yet, the order granting the 2004 examination – which is the very order under which the November 28, 2006 subpoena to United Bank (Docket Entry 391) was issued – was entered on August 3, 2004, more than two years earlier. The order specifically named United Bank as one of the banks to produce the documents requested. The documents authorized to be requested on August 3, 2004, were all documents "pertaining to the accounts, whether now opened or closed, of James C. Lehner, Suzanne Lehner, and/or United Refuse, LLC." Order at 2 (Docket Entry 80). This broad-based investigation was United Leasing's first opportunity to discover the evidence that it now wishes to present to the court.

  When United Leasing obtained control over United Refuse on March 14, 2005, it obtained the general ledger which showed the positive balances. Norment "noticed certain anomalies" after he took over day-to-day control. Declaration ¶7. Sullivan used the general ledger to prepare the complaint in this adversary proceeding and prepare for trial. Declaration ¶8. This was its second opportunity to discover the evidence that it now wishes to present to the court.

In August 2006, it followed the trail just as it could have two years earlier with the Rule 2004 order and 17 months earlier when it obtained United Refuse's general ledger. There is no satisfactory explanation why that inquiry was not undertaken in 2004, or why it would not have led to the same result. The suggestion that it could not because Steven Biss, the Lehners' attorney, volunteered information in 2006, is not credible. The subpoenas that could have been issued in 2004 should have resulted in the same information obtained in 2006. The matters could have been pursued in depositions of the Lehners or other discovery in this adversary proceeding. The voluntary disclosures in 2006 reveal nothing that would not have been obtained – voluntarily or involuntarily – in 2004 or 2005.

Sullivan states that his analysis began shortly before August 11, 2006. On August 11, 2006, Norment found and faxed certain information to counsel. The motion to defer entry of any order in this case was filed on October 19, 2006. (Docket Entry 39). It requested a delay of 20 days from October 19, 2006, so that the matter could be further investigated and United Refuse could "file a formal motion for trial by the Court of this newly-discovered evidence". Motion to Defer at 3 (Docket Entry 39). The subpoena to United Bank (Docket Entry 391) was not issued until November 28, 2006. This motion was not filed until February 15, 2007. It is not clear what caused this delay.

The only reason advanced by United Refuse for its failure to discover the evidence earlier was that counsel "did not notice the discrepancies" while preparing the complaint. Declaration ¶9. Sullivan discovered them after the trial. This is the critical point that is not explained. Everything flowed from the recognition of the significance of the positive balances in the two bank accounts. There is no reason to believe that the same evidence would not have flowed from the earlier

11

recognition of the significance of this information. A similar situation arose in *Boryan v. United States.* The Court of Appeals said:

> Unfortunate as it is for his clients, counsel's failure to recognize the applicability of this long-standing rule to the facts of this case until after judgment was entered does not make the evidence "newly discovered." The district court, accordingly, did not abuse its discretion in refusing to reopen the case to consider the 1984 Form 890.

*Boryan,* 884 F.2d at 772.

While a motion to reopen (unlike a motion under Rule 59) does not require that the proffered evidence be newly discovered, diligence remains important. Here, the proffered evidence could have been discovered before the complaint was filed using the very tools that were eventually used to discover it two years later.

If the motion were granted, there would be, in essence, a separate trial on this particular matter. The Lehners dispute United Refuse's interpretation of the proffered evidence and assert that all the money was used in the ordinary operations of the debtor for the benefit of the debtor. The proffered evidence was obviously not disclosed by United Refuse in its initial disclosures or in its response, if requested, to the Lehners' discovery. Additional discovery by all parties would be necessary.

Both parties, but particularly the Lehners, will be hampered by the fact that United Refuse sold all of its assets on July 1, 2005, and ceased operations by the end of August 2005. It is now closed. Its employees have dispersed. The events in controversy are two to four years old. This prejudices the Lehners more than United Refuse if the motion is granted. It effectively bifurcates the trial on the complaint. On the other hand, assuming that United Refuse would be successful (an assumption that the Lehners contest), United Refuse is prejudiced by not being able to recover fully if the motion is denied. In weighing the prejudices, the court notes the absence of a satisfactory

explanation why it did not recognize in a timely fashion the significance of the information it had and act on it.

The court is not satisfied that United Refuse exercised due diligence and weighs the prejudice to the Lehners in being able to fully defend themselves more heavily than United Refuse's opportunity to prove further damages. Much of American law is directed to the proposition that parties are only entitled to one bite at the apple, that there needs to be finality in judicial proceedings. While there are exceptions, United Refuse's showing is not sufficient to support one here.

The motion will be denied.

Alexandria, Virginia
June 7, 2007

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

William Daniel Sullivan
Kermit A. Rosenberg
Steven S. Biss
13510